William A. BRANDT, Jr.,
Plaintiff–Appellant,

v.

SCHAL ASSOCIATES, INC., Richard C. Halpern, Evans N. Spileos, and Northwestern University, Defendants–Appellees.

Nos. 87–2691, 88–1061.

United States Court of Appeals,
Seventh Circuit.

Argued June 1, 1988.

Decided Aug. 5, 1988.

David L. Campbell, Campbell & Campbell, St. Louis, Mo., for plaintiff-appellant.

Jeff D. Harris, Foran, Wiss & Schultz, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, WOOD Jr. and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The appellant, William A. Brandt, is the assignee of Crescent Corporation (Crescent) under an assignment for the benefit of Crescent's creditors. Crescent, a construction company, served as a subcontractor on the construction of the Northwestern University Law School. The district court dismissed with prejudice Mr. Brandt's civil RICO claim against the defendant Northwestern University (Northwestern); it imposed a condition of the payment of costs on Mr. Brandt's voluntary dismissal without prejudice of the defendants Schal Associates (Schal), Richard Halpern and Evans Spileos (collectively the Schal defendants); and it taxed costs against Mr. Brandt in favor of the Schal defendants in the amount of $13,455.91. Mr. Brandt appeals all three rulings. We affirm.

I

Background

A. *Facts*

Because Mr. Brandt appeals from the dismissal of his second amended complaint, we take as true the facts alleged in that complaint. In connection with the construction of the Northwestern University Law School, Northwestern retained Schal as construction manager.[1] Schal, in turn, subcontracted with Crescent for construction of the building's curtainwall. Schal also retained Crescent as a subcontractor on two other buildings, the One Magnificent Mile building (the OMM project) and the Chicago Board of Trade expansion (the CBOT project). Once Crescent began work on the Northwestern project, it discovered that there were several design defects in the building that would cause additional work. Mr. Brandt claims that Northwestern and Schal knew about these defects prior to contracting with Crescent, but that they intentionally withheld this information so that Crescent would accept the project. Once Crescent learned of these design defects, Northwestern and Schal told Cres-

---

1. Defendants Richard Halpern and Evans Spileos are officials of Schal who were involved in the Northwestern construction project.

cent that it would pay Crescent for extra work that it performed. However, as the construction progressed, Schal and Northwestern filed twenty-six "backcharge" letters with Crescent. A backcharge is a charge against a construction company for increased costs caused by the company.[2] Mr. Brandt claims that these backcharges were fraudulent, and that they were filed to negate Crescent's demand for additional compensation on account of the extra work it performed. At the conclusion of its work on the curtainwall in 1984, Crescent claimed that Northwestern owed it more than $4 million over and above the contract price for extra work allegedly performed during the job because of the design defects. Northwestern refused to pay this amount. Its refusal was based in part on the backcharges.

### B. *Litigation*

Crescent sought to collect payment by filing a mechanic's lien foreclosure action in the Circuit Court of Cook County, Illinois. That action still is pending. Crescent also filed this action in the district court. The second amended complaint, the operative pleading at this stage of the litigation, alleged that the defendants' actions and consequent refusal to pay constituted a violation of civil RICO, 18 U.S.C. § 1961 *et seq.*[3] The district court granted Northwestern's motion to dismiss on the ground that the complaint failed to allege a "pattern of racketeering activity." 18 U.S.C. § 1962(a). However, the court denied the Schal defendants' motion to dismiss. The court concluded that, with respect to these defendants, the complaint did allege a pat-

tern of racketeering activity because of Schal's alleged fraud on the OMM project and the CBOT project.

A few months later, Mr. Brandt requested that the case against the Schal defendants be dismissed without prejudice "at plaintiff's costs." R.227. After a hearing on September 25, 1987, the district court dismissed the claims against Schal, conditioned on Mr. Brandt's payment of "the Schal defendants' statutory costs." R.234. If Mr. Brandt failed to pay those costs, according to the court's ruling, dismissal would be converted into dismissal with prejudice. At that September 25 hearing, Mr. Brandt's counsel stated that he had no objection to making the payment of the Schal defendants' costs a condition of the dismissal. The conversation between the court and the parties went as follows:

> Mr. Harris (counsel for Schal): Your Honor indicated a few minutes ago that this dismissal obviously is with costs? The Court: Yes. Indeed, plaintiff's own motion stated that.
>
> Mr. Harris: My question to you is whether the payment of costs is a condition of the dismissal without prejudice? Clearly that is something that is within your discretion. And quite honestly, Judge, what I am concerned about is a situation where we file a bill of costs and plaintiff thumbs his nose at us, if you will. It seems to me under the circumstances, and within the discretion of your Honor, that should be listed in the order as a condition of the dismissal without prejudice.
>
> The Court: Let me inquire of Mr. Banks [counsel for Mr. Brandt]. Mr. Banks, as

---

**2.** An authority on construction work describes a backcharge as follows:

> It occasionally happens that the general contractor will incur or assume an expense that is chargeable to a subcontractor. The general contractor may pay some of the subcontractor's bills; temporarily provide the subcontractor with labor, equipment, materials, or facilities; or perform cleanup or hauling services on behalf of the subcontractor. The usual way for the general contractor to recoup these expenses is to subtract them from payments made to a subcontractor. Such a deduction is called a "backcharge" and may lead to a dispute between the general

contractor and the subcontractor who is backcharged, unless the amount involved is discussed and preferably agreed to in advance.

R. Clough, *Construction Contracting* 252 (4th ed. 1981).

**3.** The complaint also alleged six pendent state law claims. On October 23, 1986, Mr. Brandt had substituted as the party plaintiff for Crescent. He then filed a first amended complaint. After the district court dismissed this complaint on February 2, 1987, Mr. Brandt filed the second amended complaint.

you know, both documents filed by Mr. Campbell [out-of-town counsel for Mr. Brandt]—the one that was purportedly an uncontrolled dismissal, and the other one the motion for dismissal—*stated that [the dismissal] was to be at plaintiff's costs. So that I am not imposing a condition in any respect that was not specifically built in and invited by the plaintiff's filing, and the plaintiff's motion in each instance.* The only question that arises is whether counsel's request that the condition of nonprejudice be attached to plaintiff's compliance with the condition that the plaintiff himself had invited. It seems to me that's not something that can be quarreled with. Mr. Banks: *I have no argument with that, your Honor.*

Tr. of Sept. 25, 1987 at 14–15 (emphasis supplied).

Mr. Brandt filed his notice of appeal on October 15, 1987. That notice listed in detail the various orders from which Mr. Brandt was appealing. With respect to the September 25 order, the notice simply recited that he was appealing from the order "dismissing the defendant Northwestern University with prejudice." R.240.[4] This notice said nothing about the district court's order of September 25 allowing Mr. Brandt to voluntarily dismiss the Schal defendants without prejudice. Mr. Brandt also filed with the district court on October 15, 1987, pursuant to Federal Rule of Appellate Procedure 10(b)(3), a statement of issues to be raised on appeal. This statement set forth only one issue to be appealed regarding the Schal defendants. In pertinent part, the statement read:

Whether plaintiff has pleaded the existence of a pattern of racketeering activity

as to defendants Schal Associates, Inc., Richard C. Halpern, and Evans N. Spileos, where plaintiff alleged the involvement of said defendants in a scheme to defraud, and the participation of said defendants in a series of separate and distinct acts of mail and wire fraud and violations of the Travel Act over a period of more than 4 years with respect to two separate construction projects over which defendants exercised management and control.

R.242. Consistent with the notice of appeal, this statement of issues did not indicate that Mr. Brandt was appealing from the district court's imposition of conditions on the voluntary dismissal of the Schal defendants.

On October 26, 1987, the Schal defendants filed with the district court their bill of costs requesting that $13,455.91 be taxed as costs against Mr. Brandt. Mr. Brandt filed objections to those costs. At a hearing on December 29, 1987, the district court rejected Mr. Brandt's objections and awarded the Schal defendants $13,455.91 in costs. Mr. Brandt then filed a notice of appeal from the judgment assessing costs against him in that amount. This court then consolidated Mr. Brandt's two appeals.

## II

### Analysis

Mr. Brandt's two appeals raise three different issues. The first issue relates to the district court's judgment dismissing Northwestern on the ground that it had not engaged in a pattern of racketeering activity. Mr. Brandt suggests that Northwestern engaged in a wide variety of acts that caused separate injuries to Crescent, and that those acts constituted a pattern. Mr.

---

**4.** The notice of appeal read as follows:

Notice is hereby given that William A. Brandt, Jr., assignee of Crescent Corporation under an assignment for the benefit of its creditors, plantiffs above named, hereby appeal to the United States Court of Appeals for the Seventh Circuit from the judgment orders entered in this action on February 2, 1987 dismissing defendant M.O.W. Construction Company with prejudice and defendants Schal Associates, Inc., Richard C. Halpern and Evans N. Spileos, without prejudice; the judg-

ment order entered on February 10, 1987 dismissing defendant Northwestern University without prejudice; and the judgment orders entered in this action on July 6, 1987 and September 25, 1987 dismissing defendant Northwestern University with prejudice.

R.240. The dismissal of the Schal defendants on February 2, 1987 was "without prejudice to plaintiff to plead over by February 23, 1987." This order is not at issue at this point in the litigation. *See supra* note 3.

Brandt also contends that the district court erred when it imposed the condition that he pay the Schal defendants' costs when the court granted his motion to dismiss those defendants without prejudice. His final contention is that the amount of costs that the court taxed against him was excessive. We address each of these contentions in turn.

### A. Pattern of Racketeering Activity

■ The district court dismissed Mr. Brandt's RICO claim against Northwestern because the complaint failed to allege a pattern of racketeering activity. *Brandt v. Schal Assocs.*, 664 F.Supp. 1193 (N.D.Ill. 1987). The court noted that the question of "pattern" in civil RICO cases necessarily involves a fact-specific inquiry. After reviewing Mr. Brandt's complaint, the court determined that the business relationship between Northwestern and Crescent had involved only a single transaction and a single victim, and that the backcharges filed by Northwestern did not constitute separate injuries. Rather, assuming the truth of the complaint, the court concluded that "it is plain that Crescent's sole injury was its nonreceipt of money allegedly due it upon completion of, and for extra work performed on, the Northwestern Project. Each predicate act contributed to that single injury." *Id.* at 1198. Therefore, with respect to Northwestern, the court held:

> [T]he Complaint fails to satisfy the continuity aspect of the pattern requirement because it alleges Northwestern engaged in a single and finite scheme to defraud a single victim into performing extra work on a single construction project—resulting in a single injury (albeit by a series of alleged predicate acts over the course of that project).

*Id.* at 1199.

Mr. Brandt argues that the district court erroneously concluded that his second amended complaint did not allege adequately a pattern of racketeering activity by Northwestern. As we noted recently in *Jones v. Lampe*, 845 F.2d 755, 756 (7th Cir.1988), this topic "is no stranger to this court." On nearly a dozen occasions[5] since the Supreme Court's decision in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), "we have attempted to balance *Sedima's* expansive reading of civil RICO with its narrow reading of the 'pattern' requirement." *Jones*, 845 F.2d at 757. Our cases have focused on *Sedima's* articulation that it is "continuity plus relationship which combines to produce a pattern." 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. We recently said:

> Thus, in order for the predicate acts to be sufficiently continuous to amount to a pattern of racketeering activity, "the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, i.e., 'transactions somewhat separated in time and place.'" And at the same time, there must be a "relationship among activities—i.e., activities leading up to coordinated action."

*Medical Emergency Serv. Assocs. v. Foulke*, 844 F.2d 391, 395 (7th Cir.1988) (*MESA*) (quoting *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986) and *Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806, 810 (7th Cir.1987)). The quest for "continuity plus relationship" necessarily involves a fact-specific analysis. Among the relevant factors are: "(1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries." *Jones*, 845 F.2d at 757.

We believe that the district court properly concluded that the predicate acts alleged by Mr. Brandt did not constitute a pattern. Assuming, as we must, that Mr. Brandt's allegations against Northwestern are true, those allegations posit only multiple acts in furtherance of a single episode of fraud by Northwestern against a single victim. As demonstrated by our decisions in *Jones*, *MESA* and *Lipin Enters. v. Lee*, 803 F.2d 322 (7th Cir.1986), such a scheme cannot constitute a RICO pattern. In *Jones*, a bank debtor alleged that the bank had

5. *See Jones*, 845 F.2d at 756 n. 4, and cases cited therein.

coerced him into applying for a federal government loan, and that the bank had then withheld the proceeds of the loan as payment for the amount it was owed. The plaintiffs alleged a number of different acts by the bank in furtherance of its ultimate objective. However, the court did not find a pattern because there was "only one loan transaction and all the alleged predicate acts and injuries relate to that single arrangement. There were no allegations that the Bank engaged in this fraudulent activity in the past or that it threatened to do so in the future." 845 F.2d at 759. In *MESA*, the court determined that there was no pattern of racketeering activity stated in an allegation that a group of physicians left their employer, formed their own company, and attempted to take away their employer's business contracts through sundry predicate acts. The court said that "the fact remains that each of these acts relate to but a single episode of alleged wrongdoing ... and resulted in a single injury to MESA (the loss of its contract with Victory Memorial). The instant scenario involves the type of 'isolated event' that fails to manifest the threat of *continuing illegal activity....*" *MESA*, 844 F.2d at 398 (emphasis in original) (citations omitted). In *Lipin*, this court declined to find a RICO pattern even though the defendant allegedly had committed twelve different acts of mail fraud in connection with the sale of an auto leasing company and its wholly-owned subsidiary.[6] The court said:

> Lipin's complaint alleges racketeering acts all designed to defraud one victim, Lipin, on one occasion, the sale of Rifco. Lipin cannot allege that the defendants defrauded another victim with similar racketeering activity and cannot allege that Lipin has been defrauded more than once by the defendants through similar racketeering acts.

> Whatever more is required to allege a pattern of racketeering activity, that something more is lacking here. The pattern requirement was intended to limit RICO to those cases in which racke-

teering acts are committed in a manner characterizing the defendant as a person who regularly commits such crimes.... There must be some indication of a "threat of continuing activity" by the defendants, not just one instance of fraud with a single victim.

803 F.2d at 324 (quoting S.Rep. No. 617, 91st Cong., 1st Sess. 158 (1969)).

As in *Jones, MESA* and *Lipin*, the predicate acts alleged by Mr. Brandt do not involve multiple injuries, multiple victims or multiple schemes. As the district court noted, the predicate acts allegedly committed by Northwestern were the concealment of design defects, threats to terminate Crescent's contract if extra work was not performed, the mailing of false backcharges, and acts of coercion so that Crescent would accept those backcharges. *Brandt*, 664 F.Supp. at 1197–98. These acts "necessarily had to end upon completion of the Northwestern Project and the closing-out of the Crescent contract." *Id.* at 1199. There is simply no allegation that Northwestern attempted such acts against other victims, or that Northwestern attempted similar acts against Crescent with respect to another undertaking.

Mr. Brandt submits that this case is controlled by *Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir.1987), a case in which this court found a pattern of racketeering activity. In *Liquid Air*, the defendants converted 3,000 of the plaintiff's cylinders for their own use by hiring an employee of the plaintiff to create false shipping orders. *Liquid Air* is distinguishable from this case because, as the *Liquid Air* court said, "[e]ach time an invoice was falsely prepared, it deprived Liquid Air of its entitlement to rent or replacement value. Therefore, each act resulted in a distinct injury to Liquid Air and a concomitant benefit to D & R." *Id.* at 1304–05. As the court said in *Jones, Liquid Air* involved a pattern because there was "*repeated* injury caused by the defendants." 845 F.2d at 759 (emphasis in original). *Liquid Air* is thus different from this case because here we

---

**6.** In *SK Hand Tool Corp. v. Dresser Indus.*, 852 F.2d 936, 940–41 (7th Cir.1988), the court re-

lied heavily on *Lipin* to determine the absence of a pattern of racketeering activity.

do not have repeated or multiple injuries. The backcharges filed by Northwestern were not multiple injuries, but were instead the means allegedly used by Northwestern to lower a single contract price. We also note that the injuries in *Liquid Air* would have lasted for an indefinite duration if the defendants' fraud had not been discovered. In the instant case, Crescent's injury was finite in both scope and time.

The district court correctly concluded that Mr. Brandt's complaint did not raise the spectre of a pattern of racketeering activity by Northwestern.

### B. *Voluntary Dismissal*

■ Mr. Brandt contends that the district court abused its discretion when it conditioned the voluntary dismissal of the Schal defendants on the payment of those defendants' litigation costs. Under the district court's order, the RICO claim against the Schal defendants was dismissed without prejudice if Mr. Brandt paid the defendants' costs. If he failed to pay those costs, dismissal of the RICO claim would be converted into dismissal with prejudice.

We have no jurisdiction to entertain Mr. Brandt's contention. Mr. Brandt's notice of appeal did not mention any intention to appeal from the district court's order of voluntary dismissal.[7] In *Torres v. Oakland Scavenger Co.*, — U.S. ——, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), the Supreme Court held that the requirement that the party or parties taking the appeal be named in the notice of appeal was mandatory and jurisdictional. In reaching that conclusion, the Court relied in part on the advisory committee note following Rule 3 of the Federal Rules of Appellate Procedure:

> "Rule 3 and Rule 4 combine to require that a notice of appeal be filed with the clerk of the district court within the time prescribed for taking an appeal. Because the timely filing of a notice of appeal is 'mandatory and jurisdictional,' *United States v. Robinson*, [361 U.S. 220, 224, 80 S.Ct. 282, 285, 4 L.Ed.2d 259 (1960)], compliance with the provisions

of those rules is of the utmost importance."

*Id.* 108 S.Ct. at 2408 (quoting Fed.R.App.P. 3 advisory committee's note). This note, emphasized the Supreme Court, "makes no distinction among the various requirements of Rule 3 and Rule 4; rather it treats the requirements of the two rules as a single jurisdictional threshold." *Id.* Moreover, the Court specifically noted that *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), does not serve as a basis for holding that the requirement of Rule 3 at issue here—requiring the appellant to "designate the judgment, order or part thereof appealed from"—is to be treated differently. 108 S.Ct. at 2408 (quoting Fed.R. App.P. 3(c)). Rather, said the Court, *Foman* stands for the principle that the

> requirements of the rules of procedure should be liberally construed and that 'mere technicalities' should not stand in the way of consideration of a case on its merits.... [A]lthough a court may construe the rules liberally in determining whether they have been complied with, it may not waive the jurisdictional requirements of Rules 3 and 4, even for 'good cause shown' under Rule 2, if it finds that they have not been met.

*Id.* (footnote omitted).

This is hardly a case where the appellant merely failed to comply with the technicalities of compliance. Both the notice of appeal and statement of issues, while detailing the other matters that Mr. Brandt planned to raise on appeal, did not mention any intention to appeal from the September 25 order of voluntary dismissal. By affirmatively stating that he appealed from only one part of the September 25 order, Mr. Brandt excluded the other part from his appeal. The first indication that Mr. Brandt gave that he intended to appeal from the voluntary dismissal of the Schal defendants was when he filed his brief. Prior to that time, he had not only omitted the matter from his notice of appeal and statement of the issues but had affirmatively represented to the district court that

---

**7.** *See supra* note 4.

he acquiesced in a dismissal conditioned on payment of costs.

█ Even if this court does have jurisdiction, we would hold that the district court did not abuse its discretion when it imposed conditions on the plaintiff's voluntary dismissal. The imposition of costs is a condition that district courts routinely impose on voluntary dismissals. *See McCants v. Ford Motor Co.*, 781 F.2d 855, 860 (11th Cir.1986) ("A plaintiff ordinarily will not be permitted to dismiss an action without prejudice under Rule 41(a)(2) after the defendant has been put to considerable expense in preparing for trial, except on condition that the plaintiff reimburse the defendant for at least a portion of his expenses of litigation."). We have said previously that terms and conditions "are the quid for the quo of allowing the plaintiff to dismiss his suit without being prevented by the doctrine of res judicata from bringing this same suit again." *McCall–Bey v. Franzen*, 777 F.2d 1178, 1184 (7th Cir.1985). Therefore, even if this court has jurisdiction there was no abuse of discretion.

#### C. *Amount of Costs*

█ Mr. Brandt's final submission is that the district court erred when it rejected his objections to the Schal defendants' bill of costs. A district court's taxing of costs will be reversed only when there has been a clear abuse of discretion. *SK Hand Tool Corp. v. Dresser Indus.*, 852 F.2d at 943 (7th Cir.1988); *State of Illinois v. Sangamo Constr. Co.*, 657 F.2d 855, 864 (7th Cir.1981). We have reviewed Mr. Brandt's contentions and we find no abuse of discretion. As the district court noted, this lawsuit was "highly paper-intensive." Tr. of Dec. 29, 1987 at 8. Mr. Brandt's second amended complaint, which formed the basis for this appeal, was itself 55 pages. While the defendants did engage in extensive photocopying, the district court did not abuse its discretion when it concluded that this copying was necessary.

#### Conclusion

The district court properly dismissed Mr. Brandt's RICO claim against Northwestern on the ground that he did not allege a pattern of racketeering activity. Finding no other error, the judgments of the district court are affirmed.

AFFIRMED