NEW BURNHAM PRAIRIE HOMES, IN-CORPORATED, an Illinois Corporation, James E. Sylvester, James E. Sylvester Development Company, an Illinois Corporation, Constantine Karagias, Rita Karagias and Chicago Title & Trust Company, as Trustee under Trust Numbered 1076163, 1081362 and 1081361, Plaintiffs–Appellants,

v.

VILLAGE OF BURNHAM, Eldreth A. Rundlett, Individually and in his official capacity as Mayor of the Village of Burnham, Chairman of the Plan Commission and President of the Board of Local Improvements and Donald Danewicz, Individually and in his official capacity as Trustee of the Village of Burnham, Defendants–Appellees.

No. 89–1701.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 13, 1989.
Decided Aug. 21, 1990.

Edmund B. Moran, Jr., Chicago, Ill., for plaintiffs-appellants.

Peter M. Rosenthal, Peter Coblentz, Katherine Janega, Rosenthal, Murphey, Coblentz & Janega, Chicago, Ill., for defendants-appellees.

Before WOOD, Jr., COFFEY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The plaintiffs brought a four count complaint against the defendants, alleging various improprieties in regard to the defendant Village's handling of the plaintiffs' applications for building permits. Before trial, the district court first dismissed on the pleadings the plaintiffs' 42 U.S.C. § 1983 allegations of procedural and substantive due process violations and a state law claim. It later dismissed on summary judgment a claim under RICO and an equal protection claim. Count I (alleging violation of 42 U.S.C. §§ 1981 and 1982) proceeded to a jury trial.

The jury returned a verdict in favor of the defendants. The district court entered final judgment and denied the plaintiffs' motions for new trial and to alter or amend the judgment. This appeal followed.

## I

## BACKGROUND

### A. *Facts*

The plaintiffs in this action were James Sylvester (a developer), Mr. Sylvester's

company (New Burnham Prairie Homes, Inc.), and Constantine and Rita Karagias, the owners of property involved in the projected development. The defendants included the Village of Burnham, Eldreth Rundlett (the Mayor of Burnham), and Donald Danewicz (a Trustee of the Village). In essence, this case concerns a claim that the Village of Burnham and the defendant Village officers unfairly hindered the plaintiffs' development plans. The dispute centers on two main factual allegations: that the defendants were motivated by racial animus in denying the building permits, and that the defendants required the plaintiffs to bear an unequal burden in purchasing land for a public retention pond.

### 1. Racial animus and the proposed projects

Karagias purchased four acres of vacant land in 1969. Karagias and Reliable Roofing Corporation (Reliable) entered into a buy and sell contract in 1977, which was the first step in what Reliable planned would be the building of rental apartments on the property. However, Reliable was unable to obtain building permits and the contract eventually was rescinded. The complaint alleges that this development fell through because the Village did not want blacks to move into the rental housing.

In 1979 Karagias entered into a contract to sell the property to Sylvester. The contract provided that portions of the property would be purchased as the property was developed ("take-out" basis). The development plan was approved by the Village and called for building thirty single-family homes on the property. Because of financial difficulty, however, Sylvester built only three houses and sold just one.

In 1980 Sylvester applied for a building permit to construct one rental apartment building, to be surrounded eventually by a mixture of single-family and apartment buildings. Sylvester never applied for financing of this project, and he had no experience in building or managing apartments. Sylvester claims that no action ever was taken on this plan due to the defendants' desire to limit the influx of blacks. The defendants dispute this conclusion: they claim that the Village's Board of Trustees approved Sylvester's site plan, but that the Village was concerned by Sylvester's suggestion that initially he would build a temporary rather than a permanent road in front of the building.

In 1981 Sylvester submitted a plan to construct fourteen six-unit condominium buildings. The plaintiffs claim that the defendants requested "voluminous documentation." Appellants' Br. at 11. Sylvester also claims that several of the defendants at two separate dinners in 1982 threatened that he never would get building permits if he planned to rent to blacks or if he did not pay Robert Biederman (another developer and former Village attorney) $30,000 as his portion of a retention pond that would service three developments (Biederman's, Sylvester's, and a third party's). Nevertheless, Sylvester received building permission and actually built four out of the planned sixteen condominium buildings.

The defendants assert that any delay experienced by Sylvester was tied to his delinquency in paying special assessment fees.[1] The defendants also claim that approval of development plans followed when Karagias and Sylvester finally paid these assessments. On December 18, 1982, Karagias paid $20,228.88 for his delinquent assessments and for his 1983 assessments. Two days later, one of the building permits for a condominium building was issued. In 1983, when the assessments were up-to-date, two further permits were issued. There was also evidence that the Village was unable to obtain financing for the retention pond (see *infra*) because of Karagias' reputation for not paying his special assessments.

---

1. In 1974 the Village installed water mains and a combined sanitary and storm sewer that served in part the Karagias property (Special Assessments 36 and 37). In 1980, Exchange Avenue was constructed through the Karagias property (Special Assessment 40), and in 1981 Goodrich Avenue was completed (Special Assessment 45). A third road, Hammond Avenue, was never constructed. It was on Hammond Avenue that Sylvester had wanted to build his apartments and install the temporary road.

## 2. Favoritism and the purchase of land for retention pond

Former Village attorney Robert Biederman owned property (the Southpointe parcel) adjacent to the Karagias property. In 1981 Biederman began construction of condominiums on the Southpointe parcel. The plaintiffs claim that Biederman did not have to submit the same materials as they had to submit in order to secure the building·permits. Appellants' Br. at 11. Prior to construction, Biederman was informed that he would have to construct a retention pond due to stormwater drainage problems. He first suggested that he build a private pond, but the Village preferred a public pond to service the area, including the Karagias property.

Biederman purchased a parcel (known as "Outlot A") in 1981 for $63,000. The Village, desirous of putting the retention pond on that parcel, subsequently purchased part of the parcel for $90,000 through a special assessment condemnation. A hearing on the condemnation was held in June 1983, and the Circuit Court of Cook County confirmed the special assessment in May 1984. The plaintiffs allege that the defendants assured them that, if the plaintiffs did not object to the special assessment, then the Village would grant the plaintiffs' building permits. Appellants' Br. at 13. In February of 1984 Sylvester applied for a building permit for a six-unit condominium. No action has been taken on this application.

## II

## CLAIMS DISMISSED BEFORE TRIAL

### A. *Standards of Review*

Several of the plaintiffs' claims were dismissed on the pleadings; others were dismissed on summary judgment. The standards of review governing each are well settled. Dismissal of a claim is appropriate if there exists no set of facts that would support the claim and entitle the plaintiff to recover. *Illinois Health Care Assoc. v. Illinois Dep't of Public Health*, 879 F.2d 286, 288 (7th Cir.1989). In making this determination, we accept all well-pleaded allegations as true and draw all reasonable inferences from them. *Id.* Our review of the judgment of the district court is *de novo*. *Villegas v. Princeton Farms, Inc.*, 893 F.2d 919, 924–25 (7th Cir.1990).

Our standard for dealing with a grant of summary judgment is also well established. The movant bears the burden of establishing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). When the moving party has met its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2509. "In examining the district court's grant of summary judgment, our duty is to review *de novo* the record and the controlling law." *PPG Indus., Inc. v. Russell*, 887 F.2d 820, 823 (7th Cir.1989).

### B. *RICO*

██ The plaintiffs maintain that the defendants committed a RICO violation, 18 U.S.C. § 1962(c),[2] by conspiring to deny the plaintiffs' building permit applications and

---

**2.** "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

by defrauding them with regard to the price of the retention pond. The district court granted summary judgment to the defendants based on its determination that the plaintiffs alleged only one scheme (defrauding the plaintiffs to acquiesce in the special assessment), and only one injury (restriction of the right to develop the property). *New Burnham Prairie Homes, Inc. v. Village of Burnham,* Mem. op. at 15, 1988 WL 132078 (N.D.Ill. Dec. 2, 1988). The district court concluded that the plaintiffs thus failed to meet the requirement of pattern of racketeering activity. On appeal, the plaintiffs assert that one scheme to defraud is sufficient to constitute a pattern of racketeering.

A section 1962(c) RICO claim requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted). The plaintiffs allege that the conduct was undertaken through the Village of Burnham, the enterprise. The dispute involves "pattern of racketeering activity," which is defined to require that the defendants commit at least two acts of racketeering activity within ten years of each other. 18 U.S.C. § 1961(5).

The Supreme Court recently addressed the concept of "pattern" of racketeering activity in *H.J. Inc. v. Northwestern Bell Tel. Co.,* — U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The Court refused to make a strict rule for determining when acts constitute a "pattern." Instead, a court must consider whether there is a *relationship* among the acts and whether the acts amount to *continuing* racketeering acts. *Id.* at 2900. The emphasis in *Northwestern Bell* on finding continuity and relationship confirms the well-established precedent of this circuit. In *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986), we determined that predicate acts "must demonstrate both a continuity and a relationship in order to constitute a pattern of racketeering activity." *See also Brandt v. Schal Assocs., Inc.,* 854 F.2d 948, 952 (7th Cir.1988). We also have noted that the determination of continuity

and relationship "involves a fact-specific analysis." *Id.* Factors to consider include " '(1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries.' " *Id.* (quoting *Jones v. Lampe,* 845 F.2d 755, 757 (7th Cir.1988)); *see also Triad Assocs., Inc. v. Chicago Hous. Auth.,* 892 F.2d 583, 594 (7th Cir.1989). No one factor is dispositive of a claim.

In this case, the plaintiffs allege that they suffered numerous injuries when the defendants refused to grant each building permit and coerced them to acquiesce in the special assessment that set the value of Outlot A at a higher-than-market value. The plaintiffs attempt to characterize their injury as multifold: that Karagias was injured many times because the land was being sold on a "take-out basis"; that Sylvester was injured separately for each building he was unable to build; and that the plaintiffs were injured separately by being defrauded in connection with the special assessment. However, after independent examination of the record, we must agree with the district court that such a characterization is not compatible with the fraud actually alleged in the record before the district court: that the city withheld approval of the building permits until the plaintiffs paid Biederman $30,000 for their part of the retention pond.

■ We also conclude that the district court properly determined that the predicate acts alleged by the plaintiffs did not constitute a pattern of racketeering activity. That conclusion is consonant with our precedents. In *Tellis v. U.S. Fidelity & Guar. Co.,* 826 F.2d 477 (7th Cir.1986), we stated that "[t]he multiple predicate acts alleged in the complaint all clearly relate to the same transaction . . ., involved a single victim, inflicted a single injury, and occurred within a two-month period. An isolated episode of fraud does not a pattern make." *Id.* at 479. We reached a similar conclusion in *Brandt,* in which the alleged predicate acts all concerned the attempt to defraud concerning contract work: con-

cealed design defects, threats to terminate the contract if extra work was not performed, mailing of false backcharges, and efforts to coerce the plaintiff into accepting the false charges. 854 F.2d at 953. These acts were insufficient to create a pattern of racketeering activity because there was no allegation that such actions were committed against other persons or that there were other frauds perpetrated against the plaintiffs. *Id.*[3] Indeed, we previously have held appropriate summary judgment based on precisely this kind of single scheme causing injury to a single party.[4] *See Triad Assocs., Inc.,* 892 F.2d at 595 (allegation of one general scheme involving one injury to one victim does not make out RICO claim); *Brandt,* 854 F.2d at 953; *see also Sutherland v. O'Malley,* 882 F.2d 1196, 1204–05 (7th Cir.1989); *Medical Emergency Serv. Assocs. v. Foulke,* 844 F.2d 391, 398 (7th Cir.1988). Based on an independent review of the record, we conclude that the district court properly granted summary judgment on the RICO count.

## C. *Due Process*

The district court dismissed the plaintiffs' procedural due process claim. In its view, Illinois provided adequate postdeprivation procedures to remedy any wrong suffered by the plaintiffs.

In attempting to assess the plaintiffs' complaint, we are confronted at the outset with the extraordinary vagueness of the allegation. The operative paragraph simply alleges that the defendants blocked the development of the property. The district court interpreted this allegation as a claim that the plaintiffs had been denied their building permits without due process of law. We believe this was a reasonable—indeed charitable—interpretation.

This claim arises in the context of a section 1983 action. Accordingly, the plaintiffs must establish two elements: that "the conduct complained of was committed by a person acting under color of state law"; and that "this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). There has been no dispute that the alleged acts took place under color of state law; thus, we shall focus on the second prong.

■ Before a party may assert a due process argument—procedural or substantive—it must establish that it has a "legitimate claim of entitlement" to the right being asserted. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Thornton v. Barnes,* 890 F.2d 1380, 1386 (7th Cir.1989); *Smith v. Board of Educ.,* 853 F.2d 517, 520–21 (7th Cir.1988). As the Supreme Court further noted, "[p]roperty interests . . . are not created by the Constitution." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Instead, we must look to "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Our colleagues in other circuits have held that, unless it is established that the plaintiffs had the *right* to receive the building permits, a federal cause of action does not exist. *See RRI*

---

**3.** In contrast to these cases, we determined in *Morgan v. Bank of Waukegan,* 804 F.2d 970 (7th Cir.1986), that the allegation of several acts of mail fraud in connection with two separate foreclosure sales constituted a pattern. While we acknowledged that the acts could be considered "part of a single grand scheme," we concluded instead that they were distinct acts. *Id.* at 976. Nevertheless, we recognized that "[o]ne can easily hypothesize cases in which two predicate acts are so closely related that they lack the requisite continuity and do not satisfy the pattern requirement." *Id.; see also Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271, 1279 (7th

Cir.1989) (different injuries to four different victims sufficient to constitute a pattern).

**4.** The fact that the plaintiffs have a contract which ties payment to success in building on the land (the so-called "take-out" basis) does not change the essential character of the alleged fraud. This is not a fraud which, by its nature, is geared toward multiple parties. The alleged fraud concerns an attempt to coerce the landowner to pay a certain amount of money. The mere presence of a conditional seller of land along with a conditional buyer of land does not automatically turn the alleged fraud into one that affects multiple parties.

*Realty Corp. v. Incorporated Village of Southhampton,* 870 F.2d 911, 918 (2d Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989); *Carolan v. City of Kansas City,* 813 F.2d 178, 181 (8th Cir. 1987) (occupancy permit); *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 59 (2d Cir.1985); *Scott v. Greenville County,* 716 F.2d 1409, 1418–19 (4th Cir.1983). This court recently examined the related issue of whether a plaintiff had a claim of entitlement to an occupancy permit in *Polenz v. Parrott,* 883 F.2d 551 (7th Cir.1989). We recognized that, "where a municipal ordinance provides substantive criteria which, if met, dictate the issuance of a permit, an applicant who has met those criteria might assert a legitimate claim of entitlement to the permit." *Id.* at 556. But since the plaintiff in *Polenz* did not indicate that an ordinance gave them such an entitlement, the court concluded that the due process argument was not properly raised. *Id.* Here, the operative paragraph of the complaint does not assert specifically that the plaintiff had a right to receive the building permit. Rather than requiring the plaintiff to be more specific or face dismissal, the district court chose to dispose of these counts on alternative grounds. Given the record before us—and because, like the district court, we believe an alternative ground is available—we shall not pursue definitively the adequacy of the pleading.

■ The procedural due process claim must fail because the state provides the unsuccessful applicant for a building permit with a sufficient state remedy to cure the sort of "random and unauthorized" denial of which the plaintiffs complain here. The district court dismissed the plaintiffs' procedural due process claim on the basis that they had an adequate postdeprivation state remedy in the form of a mandamus action. Relying specifically on *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the court concluded that a state-provided mandamus action was

available, and specifically that an Illinois case sanctioned the use of mandamus to compel a city to issue a building permit. *See O'Connell Home Builders, Inc. v. City of Chicago,* 99 Ill.App.3d 1054, 55 Ill.Dec. 166, 425 N.E.2d 1339 (1981). We believe this analysis properly applies the Supreme Court's approach in *Parratt* and in *Zinermon v. Burch,* — U.S. —, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). *See Easter House II,* 910 F.2d 1387, 1400, 1402 (7th Cir.1990) (en banc) (following *Zinermon,* court will apply *Parratt* to acts that are "random and unauthorized," but not to "predictable" actions that cause property deprivations). The plaintiffs do not allege that the actions taken by the defendants were anything but "random and unauthorized"; indeed, the plaintiffs admit that they are not challenging the validity of any statute or regulation. R.19 at 6. Because state law provides a remedy for the alleged unauthorized deprivation, the district court did not err in dismissing the procedural due process claim. *Easter House II,* 910 F.2d at 1387; *see also Zinermon,* 110 S.Ct. at 984–85, 987 (postdeprivation process may be sufficient if deprivation is random and unpredictable); *Fields v. Durham,* 909 F.2d 94, 95–96 (4th Cir.1990) (same); *Katz v. Klehammer,* 902 F.2d 204, 207 & n. 1 (2d Cir.1990) (postdeprivation process sufficient when public official fails to follow a rule or regulation).

■ The substantive due process claim also must fail. Whatever may be the eventual contours of substantive due process in the context of property interests,[5] this complaint cannot sustain a cause of action. This court has acknowledged that a substantive due process claim can be brought in the context of property interests. *See Estate of Himelstein v. City of Fort Wayne,* 898 F.2d 573, 577 (7th Cir.1990); *Polenz,* 883 F.2d at 558; *Harding v. Coun-*

---

5. It must be acknowledged frankly that the Supreme Court has yet to set the contours of any substantive due process right with respect to property interests. *See Regents of the University of Michigan v. Ewing,* 474 U.S. 214, 223, 106 S.Ct. 507, 512, 88 L.Ed.2d 523 (1985); *see also Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 263, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977).

*ty of Door,* 870 F.2d 430, 431 (7th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989); *Burrell v. City of Kankakee,* 815 F.2d 1127, 1129 (7th Cir. 1987). However, we also have made it clear that "[t]his court is not a zoning board of appeals." *Himelstein,* 898 F.2d at 578; *see also Polenz,* 883 F.2d at 558; *Coniston Corp. v. Village of Hoffman Estates,* 844 F.2d 461, 467 (7th Cir.1988). Consequently, our recent cases have required that, in addition to alleging that the decision was arbitrary and irrational, "the plaintiff must also show either a separate constitutional violation or the inadequacy of state law remedies." *Polenz,* 883 F.2d at 558; *see also Kauth v. Hartford Ins. Co.,* 852 F.2d 951, 958 (7th Cir.1988) ("[I]n cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest, without alleging a violation of some other substantive constitutional right or that the available state remedies are inadequate, the plaintiff has not stated a substantive due process claim.") Some circuits perhaps have interpreted these contours more liberally than our cases have done. *See, e.g., Brady v. Town of Colchester,* 863 F.2d 205, 216 (2d Cir.1988) (substantive due process claim may be maintained when there is evidence that party was denied building permit due to political animus); *Bello v. Walker,* 840 F.2d 1124, 1129–30 (3d Cir.) (denial of permit for partisan political or personal reasons can support a substantive due process claim), *cert. denied,* 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 107 (1988); *Scott v. Greenville County,* 716 F.2d 1409, 1419–21 (4th Cir.1983) (moratorium on building permits that affected only one piece of property made out a substantive due process claim). Nevertheless, in conformity with the precedent of this circuit, we cannot say that the allegations in this complaint set forth a claim upon which relief can be granted; the complaint fails either to allege the violation of another constitutional interest or to establish the inadequacy of state remedies for arbitrary action.

### D. *Equal Protection*

■ The district court granted summary judgment on the equal protection claim be-

cause it decided that "a trier of fact could not reasonably infer from the ... evidence that the Village defendants acted irrationally." *New Burnham Prairie Homes, Inc. v. Village of Burnham,* Mem. op. at 12 (N.D.Ill. Dec. 2, 1988). The court noted the evidence that the retention pond was necessary, that a public pond would be aesthetically superior to several private ponds, that Sylvester was denied permits because he was delinquent in paying special assessments, and that the moratorium on building affected Biederman as well as Sylvester.

■ We agree with the district court. However, we also note a more fundamental problem with the plaintiffs' claim. In order to assert a constitutional claim based on violation of equal protection, a complaining party must assert disparate treatment based on their membership in a particular group. Discrimination based merely on *individual,* rather than group, reasons will not suffice.

A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual. "[T]he decisionmaker [must have] selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects *upon an identifiable group.*"

*Huebschen v. Department of Health and Social Servs.,* 716 F.2d 1167, 1171 (7th Cir.1983) (quoting *Personnel Administrator v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979)) (emphasis added by *Huebschen* court); *see also Gray v. Lacke,* 885 F.2d 399, 414 (7th Cir. 1989) (equal protection claim requires claim of discrimination because of "membership in a particular class"), *cert. denied,* — U.S. —, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). Even assuming that the Village favored Biederman by approving Biederman's plans more expeditiously and by requiring less extensive supporting documentation, the plaintiffs have not alleged that they have been singled out because they

belong to any particular class. We conclude, therefore, that the district court properly granted summary judgment on the equal protection claim.

## III

### TRIAL OF THE RACIAL DISCRIMINATION CHARGE

#### A. *Evidentiary Rulings*

The plaintiffs raise several objections to rulings made by the district court during their trial on the section 1981 and 1982 claims. Great deference is accorded "to the evidentiary decisions of a trial court. This court will not overturn such an evidentiary decision by a trial judge in the absence of a clear abuse of discretion." *Charles v. Daley*, 749 F.2d 452, 463 (7th Cir.1984) (citations omitted), *appeal dismissed*, 476 U.S. 54, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986); *see also F.T.C. v. Amy Travel Serv., Inc.*, 875 F.2d 564, 572 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989); *Davis v. Lane*, 814 F.2d 397, 399 (7th Cir.1987).

■ At trial on the racial discrimination causes of action, the plaintiffs tendered evidence that the retention pond was just a pretext for the Village to give money to a political ally and to acquire a site for the Village hall. In the plaintiffs' view, such evidence, even if it did not relate to racial prejudice, would have impeached the testimony of numerous defense witnesses who testified about the Village's good faith concern regarding storm water problems. The district court disallowed the evidence on the ground that it did not establish that the Village's action was motivated by racial animosity. At best, the tendered evidence established that, rather than being concerned about drainage problems, the Village was concerned about a new city hall and assisting Mr. Biederman. We give great deference to relevancy determinations by the district court. *Amy Travel Serv., Inc.*, 875 F.2d at 572. We should not disturb its judgment that these submissions were not sufficiently relevant to assist the jury on the issues properly before

it—whether the defendants acted out of racial animus. Accordingly, we conclude that the district court did not abuse its discretion by excluding the proffered evidence.

■ Nor do we believe that the district court abused its discretion by refusing to admit Exhibit 205, a letter and draft agreement written by the Village's attorney to, among others, the plaintiffs' original attorney in this case. Federal Rule of Evidence 408 authorizes the district court to exclude settlement letters. There was a substantial showing that the letter was part of a settlement attempt, *see Kritikos v. Palmer Johnson, Inc.*, 821 F.2d 418, 423 (7th Cir. 1987), and would have been used by the plaintiff to establish its claim that the demands of the defendants were a pretext for racial animus. *See generally McInnis v. A.M.F., Inc.*, 765 F.2d 240, 248–49 (1st Cir. 1985).

■ The defense called ten witnesses, eight of whom were not listed in the final pretrial order. The plaintiffs objected, but the district court allowed the witnesses to testify. The defendants claim that the witnesses were listed on the order as the plaintiffs' potential witnesses, and that, when the defendants sent the pretrial order to the plaintiffs, they included a statement that all of the plaintiffs' potential witnesses were also the defendants' potential witnesses. This statement was not typed into the final pretrial order. Again, the district court's ruling must be accorded great deference. Also, Federal Rule of Civil Procedure 16(e) allows modification of the final order to prevent manifest injustice. We cannot say now that the district court abused its discretion by allowing the defendant to call these witnesses.

#### B. *Instructions*

The plaintiffs object to the failure of the district court to give several jury instructions that they had tendered. In particular, the plaintiffs object to the district court's failure to instruct the jury that whites may sue to recover damages for racial discrimination under sections 1981

and 1982, and to give a proper instruction on proximate cause.[6]

This court has limited review of jury instructions. As we stated in *Goldman v. Fadell*, 844 F.2d 1297, 1302 (7th Cir.1988):

> In general, appellate review of jury instructions is limited. *See Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1117 (7th Cir.1983). When reviewing the adequacy of jury instructions, the court should 'construe them in their entirety and not in artificial isolation.' *Id.* at 1117. Reversal is only mandated if the jury's comprehension of the issues is so misguided that a litigant is prejudiced.

■ Based on this limited review on appeal, we determine that the failure to give the instruction that whites can recover under sections 1981 and 1982 does not mandate reversal. The jury was instructed as to what the plaintiffs had to prove in order to recover.[7] The jury was further instructed that it "will find for the plaintiff" if it finds that all of the elements were met. Taken together, we conclude that the failure to include an instruction that whites can recover did not misguide the jury regarding the findings it had to make, and thus there was no error. Furthermore, we do not believe that the court committed error by deciding to give the defendants' version of the proximate cause instruction because the court gave an alternate version that contained a correct statement of law.

■ Contrary to the recommendation of both parties, the court declined to instruct the jury with respect to the problem of mixed motives. We believe that a mixed motive instruction would have been appropriate. *See Bachman v. St. Monica's Congregation*, 902 F.2d 1259, 1262–63 (7th Cir. 1990). However, we also believe that the error was cured by the incorporation of a mixed motive defense in a special interrogatory to be decided by the jury with the verdict. We conclude, therefore, that the district court did not err in refusing the instructions proffered by the plaintiffs.

## Conclusion

For the foregoing reasons, we conclude that the district court's grant of summary judgment on the RICO and equal protection counts and its dismissal of the due process counts should be affirmed. We also conclude that there was no error in the district court's evidentiary rulings.

AFFIRMED.

---

**6.** In addition, the plaintiffs asserted on appeal that the district court erred by not giving their instruction that the number of witnesses testifying to a certain issue should not make the truth of that issue more plausible. The district court actually gave an instruction regarding the weight to be placed on the number of witnesses: "Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or non-existence of any fact. You may find that the testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary." R.140 at 6. There is no error if the instruction actually given by the district court adequately presents the party's legal theory. *McDonald v. Sandvik Process Sys., Inc.*, 870 F.2d 389, 395 (7th Cir. 1989).

**7.** *First:* That the defendant unreasonably and irrationally delayed or denied the issuance of building permits for the construction of residential units on the New Burnham Prairie Homes property;

*Second:* That a motivating factor for the failure to issue the building permits was the defendant's intent to discriminate against black persons for the purpose of preventing them from purchasing or renting residential units in the Village of Burnham;

*Third:* That there is a substantial likelihood that plaintiffs would have gone forward with the construction of the residential units for which they were denied permits if it were not for the actions of the defendant; and

*Fourth:* That the failure of the defendant to issue building permits interfered with the right of black persons to purchase or lease real property.

R.140 at 13.