**Byron CLEAVES, Plaintiff,**

v.

**CITY OF CHICAGO, Defendant.[1]**

**No. 98 C 1219.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 9, 1998.

---

1. The proper defendant in this case is the City of Chicago, not the Chicago Police Department. Accordingly, the City of Chicago is substituted as defendant.

Byron E. Cleaves, Chicago, IL, pro se.

George Thomson, Assistant Corporation Counsel, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Byron Cleaves, brings suit against the defendant, the City of Chicago, alleging violation of Title VII of the Civil

Rights Act of 1964 and 42 U.S.C. §§ 1981 and 1983. The City moves to dismiss the complaint. For the following reasons, the motion is denied.

## Background

Byron Cleaves filed a *pro se* complaint on February 26, 1998.[2] The City terminated Mr. Cleaves from his position as a probationary police officer on October 28, 1997. Mr. Cleaves claims his termination was discriminatory.

Mr. Cleaves alleges the City told him he was being fired because he failed to notify the City of his termination from the Beloit, Wisconsin Police Department. Mr. Cleaves claims, however, that when he was hired he informed the Chicago Police Department ("CPD") of his previous termination and the circumstance surrounding that termination. Mr. Cleaves states he informed Sergeant Diane O'Sullivan that he had, in fact, reported his previous termination on an affidavit form.[3] Mr. Cleaves alleges this documentation "strangely" disappeared after he informed Sergeant O'Sullivan of its existence. Additionally, Mr. Cleaves claims the CPD told the Beloit Police Department that he would be fired because he had been "written up" twice, not because of his previous termination.

Mr. Cleaves also claims he was terminated in retaliation for not supporting a sexual harassment victim. Mr. Cleaves alleges that on June 27, 1997, Sergeants O'Sullivan and Lopez came to his classroom[4] and informed the class they were to support a sexual harassment victim even if they were unaware of the circumstances surrounding the alleged harassment. According to Mr. Cleaves, he was then asked to speak to the Internal Affairs Department ("IAD") about the sexual harassment situation. Mr. Cleaves alleges that his statement conflicted with the victim's statement and the CPD sergeants' wishes.

Mr. Cleaves also claims to have encountered the accused harasser. The accused harasser told Mr. Cleaves that he was going to sue the victim and the victim's witnesses. Mr. Cleaves informed the victim's witnesses of the harasser's threats. Mr. Cleaves claims that after talking to the witnesses he was improperly accused of interfering with an internal investigation.

Mr. Cleaves finally claims he was improperly written up as being absent from duty without permission. On May 7, 1997, Mr. Cleaves informed Sergeant O'Sullivan that he would not be at work due to the death of his father-in-law. Mr. Cleaves is not married. At the time of the incident Mr. Cleaves was engaged and, in his view, married. Although Mr. Cleaves did not technically have a father-in-law, he suggests that if homosexual partners may receive the same benefits as married, heterosexual couples, then he should also have those rights even if he does not have a marriage license. Mr. Cleaves claims it was improper for him to be written up for being absent without permission and for filing a false report.

## Scope of EEOC Charge

The City argues Mr. Cleaves' race discrimination claim was not included in his Equal Opportunity Employment Commission ("EEOC") charge. Generally, a plaintiff cannot bring claims that were not included in an

---

2. A *pro se* complaint, "however inartfully pleaded," is held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). The court's role is to ensure that claims of *pro se* litigants are given "fair and meaningful consideration." *Matzker v. Herr*, 748 F.2d 1142, 1146 (7th Cir.1984). Accordingly, *pro se* complaints must be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The complaint need not specify the correct legal theory, nor point to the correct statute in order to survive a motion to dismiss. *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992). Finally, a district court may dismiss a complaint only if "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes, supra*, 449 U.S. at 10, 101 S.Ct. 173.

3. Mr. Cleaves' response contains facts that were not presented in his complaint. Since Mr. Cleaves is acting *pro se* in this case and the City had an opportunity to respond to these allegations in its reply brief, I will consider the additional factual allegations part of the original complaint

4. Presumably at the Chicago Police Academy.

EEOC charge. *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994). "This rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion...and of giving the employe[r][sic] some warning of the conduct about which the employee is aggrieved." *Id.* (citations omitted).

Mr. Cleaves filed his EEOC charge on October 29, 1997. He checked the boxes for "retaliation" and "other." (10/29/97 EEOC Charge). Mr. Cleaves' charge states he participated in an internal sexual harassment investigation in July, 1997, and was terminated on October 28, 1997. The charge states that Mr. Cleaves was told he was being terminated because he: 1) failed to notify the City about his termination from the Beloit Police Department; 2) was absent from duty without authorization and filed a false report; and 3) interfered with an internal investigation. Mr. Cleaves' charge alleges these actions constitute retaliation under the Civil Rights Act of 1964.

The City argues Mr. Cleaves' race discrimination claims are not included in his EEOC charge because he did not check the box for "race" and did not mention race discrimination in the body of the charge. I agree. Mr. Cleaves' race discrimination claim is not reasonably related to his retaliation claim.[5]

### Retaliation

■■■ To make out a claim for retaliation under Title VII, Mr. Cleaves must show that "(1) [he] engaged in statutorily protected expression; (2)[he] suffered an adverse action by [his] employer; and (3) there is a causal link between the protected expression and the adverse action." *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1313 (7th Cir.1989). The City argues Mr. Cleaves did not engage in protected expression.

Mr. Cleaves, however, claims he exercised his First Amendment rights to free speech by giving an accurate statement to the IAD regarding an alleged sexual harassment inci-

dent. Since his statement did not relate the facts in a way his superiors wanted the facts told, Mr. Cleaves claims he became the object of a variety of retaliatory acts that eventually led to his termination. Among the alleged retaliatory acts were that he was improperly written up for impeding an internal investigation and disciplined for allegedly not reporting his dismissal from the Beloit Police Department. These actions followed on the heels of Mr. Cleaves' statement to IAD. Mr. Cleaves has stated a claim for retaliation.

### Unequal Treatment

#### A. Title VII

■■ Mr. Cleaves claims he was unfairly disciplined for being absent from work without permission. Mr. Cleaves informed Sergeant O'Sullivan he needed a sick day because his father-in-law died. In fact, Mr. Cleaves is not married and has no father-in-law. Mr. Cleaves argues, however, that, since non-married homosexual partners receive City benefits, non-married heterosexual partners should receive City benefits. Drawing all inferences in favor of Mr. Cleaves, it appears he is claiming that unmarried homosexual couples are permitted sick days or leave when an "in-law" dies but that unmarried heterosexual partners are not. Marital status is not a protected classification under Title VII. 42 U.S.C. § 2000e-2(a)(1). While sex discrimination is cognizable, the facts in Mr. Cleaves' claim regarding his absence from work do not indicate any discrimination occurred due to his gender. Mr. Cleaves' claim could be read to state a claim for discrimination based on his heterosexual sexual orientation; that is, as a heterosexual in a relationship he does not have the same rights as a homosexual in a relationship. Sexual orientation, however, also is not protected under Title VII.

---

5. Mr. Cleaves attached a second EEOC charge to his response. Mr. Cleaves' second EEOC charge is undated. Mr. Cleaves checked the "race," "sex," and "retaliation" boxes, recited the same facts that are in his first EEOC charge, and stated he was discriminated against based on race and sex. Mr. Cleaves did not attach a second EEOC right to sue letter to his response. It is possible Mr. Cleaves' second charge is still under investigation. Additionally, it could be Mr. Cleaves' second EEOC charge is time-barred.

## B. Section 1983

■ Mr. Cleaves may also be attempting to allege an equal protection claim under 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that: (1) the person who committed the violation acted under color of state law; (2) and that the conduct deprived the plaintiff of rights, privileges, and immunities secured by the Constitution or laws of the United States. *New Burnham Prairie Homes, Inc. v. Village of Burnham,* 910 F.2d 1474, 1479 (7th Cir.1990) (citation omitted). Mr. Cleaves alleges that the City, by instituting a policy that provides greater benefits for unmarried homosexual couples, and Sergeant O'Sullivan, by acting under color of state law in finding him absent without cause, violated his equal protection rights. In particular, he claims the City violated his rights to equal protection based on his marital status and sexual orientation.

■ Neither marital status nor sexual orientation involve a suspect classification or impact a fundamental interest, and thus, equal protection claims on those bases are examined under the rational basis test. *See Nabozny v. Podlesny,* 92 F.3d 446, 458 (7th Cir.1996) (upholding equal protection claim based on sexual orientation under rational basis test); *Smith v. Shalala,* 5 F.3d 235, 239 (7th Cir.1993) (reviewing equal protection claim based on marital status under rational basis test). "Under rational basis review there is no constitutional violation if 'there is any reasonably conceivable state of facts' that would provide a rational basis for the government's conduct." *Nabozny,* 92 F.3d at 458 (quoting *F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 313–14, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)).

The City argues that Mr. Cleaves fails to state a claim because he has not alleged facts showing that the government's actions are irrational. The federal courts work under a notice-pleading standard and Mr. Cleaves has sufficiently put the City on notice of his Section 1983 claims and the actions he believes violated his equal protection rights. The City does not argue that the classifications alleged to be discriminatory by Mr. Cleaves have any rational basis.

The City also argues Mr. Cleaves' Section 1983 claim is deficient for failure to allege a City policy caused his injury. Mr. Cleaves asserts that the City provides unmarried homosexual couples with greater rights than unmarried heterosexual couples. Mr. Cleaves has pled a City policy.

### Conclusion

For the foregoing reasons, Mr. Cleaves adequately asserts a Title VII claim for retaliation and a Section 1983 claim for violation of his equal protection rights. The City's motion to dismiss is denied.