948 F.2d 1288
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GANNETT OUTDOOR COMPANY OF MICHIGAN, Plaintiff-Appellant,
v.
CITY OF PONTIAC; Bruce Richards; and Florentine Gallero,
Defendants-Appellees.
 No. 90-1173.
 United States Court of Appeals, Sixth Circuit.
 Nov. 22, 1991.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges, and WISEMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Gannett Outdoor Company of Michigan appeals an adverse summary judgment dismissing its claim, under 42 U.S.C. § 1983, that the City of Pontiac violated its first amendment right to free expression. The issues are 1) whether the district court abused its discretion by ruling upon Gannett's first amendment claim without having first ruled upon pendent state law claims, the resolution of which might have rendered the first amendment decision unnecessary; 2) whether Gannett timely appealed from the alleged abuse of discretion; and 3) whether the district court erred in failing to determine, prior to its first amendment ruling, whether city officials' actions were authorized by city ordinance and/or state law.
 
 
 2
 We conclude that Gannett failed to timely appeal the district court's order remanding the pendent state law claims to state court. We also conclude, however, that the district court abused its discretion in failing to address potentially dispositive state law issues before addressing the federal constitutional issue.
 
 I.
 
 3
 This controversy arose when Gannett Outdoor Company's plans to erect billboard signs within Pontiac, Michigan, came into conflict with the Pontiac Building Department's enforcement of local zoning ordinances.
 
 
 4
 Pontiac zoning ordinances specify the types of signs, if any, which may be placed within each district or zone in the city. The zoning ordinances also authorize the Planning Commission to make "special exceptions" to the rules if the Commission follows specified procedures and reaches certain findings. For each district, the ordinance contains a statement of intent covering the purpose of the zoning restrictions for that district. The ordinance names the City Building Inspector as the administrative officer of the zoning ordinance. The content and interpretation of the ordinance is not directly at issue on appeal.
 
 
 5
 Through its zoning inspectors, the Pontiac Building Department enforces the zoning ordinance as it bears upon placement of billboard signs. The department grants permits only for sign erections that comply with the zoning ordinance and with other regulations that are not at issue. During 1987 and 1988, a newly hired building inspector, defendant Florentine Gallero, issued permits for Gannett to erect billboard signs at five different locations in the city for the display of a variety of commercial and noncommercial messages. Gannett proceeded to erect the billboard signs. Later, defendant Bruce Richards, Supervising Building Inspector, learned of the five sign permits and determined that their issuance was erroneous.
 
 
 6
 According to Richards, the first sign site was in an R-3 residential zone, and the zoning ordinance prohibits all signs in the R-3 district. The second and third sign sites allegedly were in a local business district and an office business district, respectively. The zoning ordinance as interpreted permits signs in the local office and business districts only as "accessory" uses. According to the city, the second and third signs were not "accessory" in nature. The fourth and fifth sign sites allegedly were in the fringe central business and the manufacturing districts, respectively. The city claims that the zoning ordinance permits signs in these districts as accessory or nonaccessory uses but only if the Planning Commission grants a "special exception permit" in accordance with the zoning ordinance.
 
 
 7
 Defendant Richards informed Gannett that the permits for the five locations were improperly issued and therefore were canceled and void. Gannett continued to erect the signs without seeking special exception permits and filed a three-count complaint in Oakland County Circuit Court. Count I sought relief under 42 U.S.C. § 1983 on the grounds that city officials violated Gannett's first amendment right to free expression and fourteenth amendment rights to due process and equal protection. Counts II and III were state law claims. Count II requested a writ of mandamus to compel the city to reissue the permits and to take all necessary action to allow Gannett to erect the signs. With respect to Count II, Gannett contended that the building inspectors were misinterpreting the ordinance, which if properly construed, would permit the erection of its signs. Count III alleged that the building department's interpretation and application of the zoning ordinance exceeded the city's authority under Michigan's Home Rule Act, Mich.Comp.Laws Ann. § 117.41(5).
 
 
 8
 Defendants removed the case to federal court. Gannett and the city filed cross motions for summary judgment. In a July 19, 1989, order, the district court granted summary judgment for the city on the due process and equal protection claims of Count I while taking the first amendment claim of Count I under advisement. The court remanded the state law claims of Counts II and III to the Oakland County Circuit Court. However, Gannett apparently has not pursued the state law claims there.
 
 
 9
 On August 17, 1989, the court granted summary judgment for the city on the first amendment claim of Count I. Gannett filed a motion for reconsideration. Gannett argued that the court had erred by deciding the first amendment issue without first deciding the state law issues of 1) whether the city officials properly construed the ordinance and 2) whether the ordinance, properly construed, was valid under the Michigan Home Rule Act. The court denied the motion for reconsideration. Gannett appeals from the August 17, 1989, decision and from the denial of its motion for reconsideration.
 
 II.
 
 10
 A. The State Law Issues vs. Constitutional Issues
 
 
 11
 In Schmidt v. Oakland Unified School Dist., 457 U.S. 594, 595 (1982) (per curiam), the Court held that the Ninth Circuit abused its discretion by failing to address pendent state law claims whose resolution might have made it unnecessary to reach a federal constitutional issue:
 
 
 12
 California Educ.Code Ann. § 39640 (West Supp.1982) requires school districts to award any contracts for work involving more than $12,000 to the "lowest responsible bidder." For projects over $100,000, the Oakland School District requires that to be considered responsible, general contractors must use minority-owned businesses for at least 25 percent of the dollar amount of the total bid. Petitioners submitted the low bid for an advertised project but were disqualified under the School District plan as not being responsible. They brought this action claiming damages and asserting that the affirmative-action plan violated not only the Federal Constitution but also state law. The Court of Appeals affirmed a judgment of the District Court upholding the plan on constitutional grounds. 662 F.2d 550 (1981). Although the Court of Appeals acknowledged that under one of its prior decisions, the plan at issue might be invalid under state law, it declined to decide the state-law question since it was a sensitive matter and petitioners could present it to the state courts.
 
 
 13
 If the affirmative-action plan is invalid under state law, the Court of Appeals need not have reached the federal constitutional issue. Nevertheless, the Court of Appeals declined to resolve the pendent state-law claim. Under Hagans v. Lavine, 415 U.S. 528, 546 ... (1974), and Mine Workers v. Gibbs, 383 U.S. 715 ... (1966), this was an abuse of discretion in the circumstances of this case.
 
 
 14
 Id. at 594-95 (emphasis added).
 
 
 15
 There are only superficial distinctions between the facts in Schmidt and Gannett's situation: 1) Gannett challenges city-made as well as pure state law; 2) the abuse of discretion in Schmidt occurred at the appellate rather than at the district court level; and 3) the Ninth Circuit in Schmidt "declined to decide" on the basis that the state courts could hear the claim, while the district court in this case remanded the pendent state law claims. None of these distinctions suggests that the outcome here should be different from the outcome in Schmidt. Thus the Schmidt precedent applies directly.
 
 
 16
 Moreover, in Miami Univ. Associated Student Gov't v. Shriver, 735 F.2d 201, 203-04 (6th Cir.1984), this court remanded a case "for express consideration of the state law issues in the possibility that this [would] avoid the need to decide the difficult constitutional questions at issue." Miami University enforced a "no car" policy for most of its undergraduates. A student association challenged the rule on grounds that 1) the University Board of Trustees lacked authority under state law to impose such a rule, and 2) the rule violated certain rights under the fourteenth amendment. Id. The trial judge dismissed the case on fourteenth amendment grounds but did not address the merits of the state law claim. Id. The appellate court reversed the case in view of the "well-established principle that the federal courts should not decide a constitutional question if there is some other ground upon which to dispose of the case." Id. at 203.
 
 
 17
 Like Schmidt, Miami is substantively indistinguishable from Gannett's situation. Gannett does raise the additional issue of whether certain acts conform to city-made (as well as state-made) law. Yet, in enacting zoning ordinances, cities merely exercise delegated state power. In this case, the district court formally remanded the state law claims to the state courts, where the action originally had been brought, while the errant courts in Schmidt and Miami apparently just "declined to decide" the state law claims. However, given that district courts have an obligation to hear such state law claims first, it would be anomalous to allow district courts to circumvent that responsibility simply by remanding state law claims to state courts for later resolution.
 
 
 18
 Under the Schmidt and Miami precedents, then, the district court should have addressed the merits of Gannett's claims that Pontiac acted in violation of its own zoning ordinance and/or Michigan home rule law.
 
 B. The State Law Claims
 
 19
 In the notice filed January 23, 1990, Gannett specifically notices an appeal from "the summary judgment entered in this action on August 17, 1989 and the memorandum opinion and order denying plaintiff's motion for reconsideration of the summary judgment entered in this action on December 28, 1989." The August 17, 1989, order granted summary judgment for the defendants on the first amendment claim only. Thus Gannett did not timely notice an appeal from the July 19, 1989, written order in which the district court remanded Gannett's state law claims, Counts II and III, to state court. Gannett never objected to, or appealed from, the July 19, 1989, order.
 
 
 20
 Where an appellant specifically notices intent to appeal from only certain orders, or parts of orders, some circuits have refused to hear issues that spring from other (parts of) orders. Brandt v. Schal Associates, 854 F.2d 948, 954 (7th Cir.1988); see also Averitt v. Southland Motor Inn, 720 F.2d 1178, 1181 (10th Cir.1983). More importantly, for our purposes, the requirement for filing a timely appeal is jurisdictional. Brainerd v. Beal, 498 F.2d 901, 902 (7th Cir.), cert. denied, 419 U.S. 1069 (1974). Under Fed.R.App.P. 4(a), Gannett had 30 days after entry of the July 19, 1989, order to file an appeal as of right. Since the time to move for reconsideration or to appeal had passed by the time the notice of appeal was filed, Gannett is deemed to have waived any objection to the order remanding the state law claims.
 
 
 21
 C. The State Law "Issues"
 
 
 22
 The district court analyzed the constitutionality of the city officials' interpretation of the zoning ordinance without determining whether this interpretation was in fact consistent with the ordinance itself or with Michigan home rule law. Gannett, of course, argued that the interpretation was inconsistent with both. The district court lent some support to Gannett's argument by noting:
 
 
 23
 On its face then, the zoning ordinance does not provide for the type of distinction the city draws.... The ordinance simply does not require or permit the city to allow or prohibit non-accessory use signs in some zones but not others. Such signs are simply not one of the uses requiring a special exception permit or ones for which no such permit is allowed.
 
 
 24
 In the district court's view, the potentially dispositive state law issues were not before the court because the state law claims had been remanded to the state courts. However, the removal from the federal litigation of Gannett's claim, or chance to win judgment against, the city and its officials did not eliminate the possibility of deciding the case on the basis of state law issues. Moreover, the federal courts' policy of not deciding potentially far-reaching questions of federal constitutional law where other grounds of decision are available should apply with equal force whether or not the alternate ground would result in a judgment for one of the parties. Therefore, while Schmidt and Miami might be read as applying only to the resolution of state law claims, we hold that these cases apply as well to the resolution of state law issues properly before the court, whether or not resolution of the issues would support a specific claim of a party. Accordingly, while we find no other error, we conclude that the district court below abused its discretion in failing to address the potentially dispositive state law issues before it.
 
 III.
 
 25
 For the foregoing reasons, the district court's order remanding the state law claims to state court is AFFIRMED. This case is REMANDED to the district court for consideration of the state law issue of whether the Pontiac Building Department's interpretation of the zoning ordinance is invalid in light of the provisions of the ordinance itself and the Michigan Home Rule Act. The summary judgment for the city and its officials on the first amendment issue, Count I, is VACATED in order that the state law issues may be considered and resolved.
 
 
 
 *
 The Honorable Thomas A. Wiseman, Jr., Chief Judge of the United States District Court for the Middle District of Tennessee, sitting by designation